SAWAYA, J.,
dissenting.
The majority erroneously eliminates a valuable contract provision that State Farm Fire and Casualty Company has every right to enforce against a claimant making a claim for PIP benefits; the majority fails to properly distinguish a condition precedent to recovery or suit that must be complied with by a claimant from a contract obligation that an assign-ee of benefits must otherwise agree to be bound by; the majority misinterprets section 627.736(6), Florida Statutes (2007), to require State Farm to obtain what is in essence a bill of discovery in order to receive information regarding the validity of a claim from the very person or organization making the claim or seeking payment from State Farm; the *337 majority misinterprets the clear and unambiguous examination under oath (EUO) clause in the insurance policy issued by State Farm; and the majority cites cases that do not stand for the proposition for which they are cited. Indeed, there is no precedent that the majority can cite for its general holding that an assignee of PIP benefits must actually agree to be bound by an EUO clause in an insurance contract that is a condition precedent to recovery.
The insurance policy State Farm issued to Renard St. Louis contained an EUO clause that specifically provides, “[A]ny person or organization making claim or seeking payment ... must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require.” (Emphasis omitted). After St. Louis was involved in an accident, he received medical treatment and assigned the No-Fault benefits and the cause of action to recover those benefits to David Shaw, David G. Shaw, D.C., P.A., d/b/a Central Florida Chiropractic Center, DC Services, LLC, DC Supply, LLC, and Charles Machler (collectively “Appellants”). The issue is whether State Farm has the right to enforce the EUO provision in the contract against an assignee. I believe that it does.
Long ago, in Claflin v. Commonwealth Insurance Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884), the United States Supreme Court recognized the importance of EUO requirements in insurance contracts when it observed that an insurer is entitled “to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims.” Id. at 94-95, 3 S.Ct. 507; see also Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 306 (Fla. 4th DCA 1995) (stating that the purpose of an EUO clause is to enable the insurance company to properly investigate claims to protect itself against fraudulent claims (citing Claflin)), review denied, 670 So.2d 938 (Fla.1996). The Florida Supreme Court recognized a century ago the importance and validity of EUO provisions in insurance contracts in Southern Home Insurance Co. v. Putnal, 57 Fla. 199, 49 So. 922 (1909). Other courts also recognize that a policy provision requiring submission “ ‘to examination under oath regarding the loss is reasonable and valid, and if breached, the insurer would be deprived of a valuable right for which it had contracted.’” Laine v. Allstate Ins. Co., 355 F.Supp.2d 1303, 1305 (N.D.Fla.2005) (quoting 5A John A. Appleman & Jean Appleman, Insurance Law & Practice § 3549 at 549-50 (1970)).
In the final analysis, this case is all about contract rights. The Florida courts have consistently held that an insurance company has the right to include legally valid provisions and conditions in its policies that it deems desirable or appropriate. Green v. Life & Health of Am., 704 So.2d 1386, 1391 (Fla.1998). State Farm had every right to include the EUO provision in its contract as a condition precedent to payment or suit, just as insurance companies have done in this state for over a century; State Farm had every right to expect and require that the EUO requirement be complied with by any person or organization making a claim or seeking payment so that State Farm can determine whether the claim is proper or fraudulent; and State Farm had every right to require and expect that this clause be complied with by assignees of PIP benefits who are no less capable of filing fraudulent claims than insureds. The insured and his assignees — the Appellants — do not have the right to take this valuable contract right and investigative tool away from *338 State Farm through the mere expedient of an assignment.
The insurance policy issued by State Farm makes it explicitly clear that all policy terms and provisions must be complied with before recovery may be had against State Farm. Specifically, the insurance policy issued by State Farm clearly and expressly provides, “There is no right of action against us ... until all the terms of this policy have been met....” One of those terms in the policy is the EUO provision previously quoted.
The courts have consistently held that an EUO provision in an insurance policy is a condition precedent that must be complied with in order to make a claim or maintain an action to recover policy benefits. See Goldman; see also Starling v. Allstate Floridian Ins. Co., 956 So.2d 511, 513 (Fla. 5th DCA 2007); Fassi v. Am. Fire & Cas. Co., 700 So.2d 51 (Fla. 5th DCA 1997). Courts in other jurisdictions also interpret EUO provisions to be conditions precedent to making a claim and filing suit to recover the claim under the policy. See Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944, 947 (11th Cir.), cert. denied, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990). It is well recognized that failure to comply with this condition precedent is a material breach of the insurance contract that precludes recovery. Goldman; Stringer v. Fireman’s Fund Ins. Co., 622 So.2d 145 (Fla. 3d DCA), review denied, 630 So.2d 1101 (Fla.1993).
Appellants certainly fall within the provisions of the EUO clause because they are any person or organization and they are making claim or seeking payment; they should, therefore, be bound by the EUO provision as a condition precedent to making claim or seeking payment through litigation. This comports with Florida law, which has provided for some time that an assignment of benefits or a cause of action to recover those benefits under a contract does not remove from the assignee the burden of compliance with contract conditions. In Shreve Land Co. v. J & D Financial Corp., 421 So.2d 722 (Fla. 3d DCA 1982), the assignor assigned its interest in the purchase price due under a contract. The assignee subsequently recovered a judgment against the original purchaser under the contract. In reversing that judgment, the court held:
The law is well settled that an assignee succeeds to his assignor’s rights under the assignment of a contract and takes it with all the burdens to which it is subject in the hands of the assignor. If the assignee seeks to enforce the contract, he must show that all conditions have been performed either by himself or the assignor.
Id. at 724.
This general principle was adopted by the Florida Supreme Court long ago in Florida East Coast Railway Co. v. Eno, 99 Fla. 887, 128 So. 622 (1930), wherein a contractor, Eno, assigned to a bank his rights to proceeds due under a contract from the owner of certain property. An interpleader action was filed by the owner after the bank, as assignee, and other claimants made competing claims to those funds. The court held that
[t]he bank, as Eno’s assignee, occupies the same position as did Eno with respect to the moneys, having the same rights, and being subject to the same equities, conditions, and defenses, the assignment not being a negotiable instrument. The mere assignment “of all sums due and to become due the contractor” in and of itself creates no different or other liability of the owner to the assignee than that which existed from the owner to the assignor.
Id. at 626. This rule has been reaffirmed by the courts in more recent decisions. *339 See Law Office of David J. Stern, P.A. v. Sec. Nat. Servicing Corp., 969 So.2d 962, 968 (Fla.2007) (“ ‘As a general rule, the assignee of a nonnegotiable instrument takes it with all the rights of the assignor, and subject to all the equities and defenses of the debtor connected with or growing out of the obligation that the obligor had against the assignor at the time of- the assignment.’” (quoting State v. Family Bank of Hallandale, 667 So.2d 257, 259 (Fla. 1st DCA 1995))); Farkus v. Fla. Land Sales & Dev. Co., 915 So.2d 688, 689 (Fla. 5th DCA 2005); Family Bank of Hallandale, 667 So.2d at 259 (“The law is well established that an unqualified assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned. The assignee steps into the shoes of the assignor and is subject to all equities and defenses that could have been asserted against the assignor had the assignment not been made.” (citing Dependable Ins. Co. v. Landers, 421 So.2d 175, 179 (Fla. 5th DCA 1982))); Fred S. Conrad Const. Co. v. Exch. Bank of St. Augustine, 178 So.2d 217, 219 (Fla. 1st DCA 1965) (“It is fundamental that the assignee of a contract or non-negotiable chose in action occupies the same position as its assignor and is subject to the same equities, conditions and defenses that could have been asserted against the assignor.”); Nusbaum v. Riskin, 136 So.2d 1, 3 (Fla. 2d DCA 1961) (“It is true that an assignee takes the assignment of a non-negotiable chose subject to any defenses the debtor has against the assignor.”).
In discussing the general rule that an assignee steps into the shoes of the assign- or, the majority asserts that this rule simply means that the assignee acquires no greater rights than the assignor. Applying this rule to this case, it means that just as the insured had no right as a claimant to refuse compliance with the EUO condition precedent, the assignees/Appellants as claimants have no greater right to do so. That is how the court in Prudential Property & Casualty Insurance Co. v. Nardone, 332 N.J.Super. 126, 752 A.2d 859 (2000), applied the rule. In Nardone, which is strikingly similar to the instant case, the injured insured assigned his PIP benefits to his health care provider, who then instituted arbitration proceedings to collect its claims. The insurance policy contained an EUO clause similar to the clause in the instant case, and the assignees refused to attend the requested EUOs. The court held that the refusal to comply with that condition precedent prohibited recovery. The court explained:
Since Dr. Nardone and others, by filing forty-seven complaints for arbitration with the AAA, are seeking payment of PIP benefits on assignment from Pru-Pac’s insureds, they are bound to the assignors’ contract terms and must comply with the insurance policies’ cooperation and EUO clauses. As such, Dr. Nardone, as well as all other assignees, must comply with the contractual EUO and cooperation clauses as a condition precedent to seeking benefits. Mariani v. Bender, 85 N.J.Super. 490, 500, 205 A.2d 323 (App.Div.1964).
As assignees of the allegedly treated parties, Dr. Nardone, Dr. Kundrat, Her-mosa Medical Services and Camino Rehabilitation have no greater rights than the assignors. Allstate Ins., Co. v. Lopez, 325 N.J.Super. 268, 277, 738 A.2d 987 (Law Div.1999).
PruPac’s contract, under which defendants seek PIP benefits, clearly requires a claimant’s cooperation as a condition precedent to recovery of benefits. Specifically, the PruPac policy provides:
YOUR DUTIES AFTER AN ACCIDENT AND LOSS ... [.] Persons making a claim under this policy must:
*340 [[Image here]]
(2) Cooperate with us in investigating, settling, or defending any loss or suit. Cooperation includes attending hearings and trials, helping in suing others who are responsible for the accident, giving evidence, and helping us get witnesses to a trial....
[[Image here]]
(7) Give us a Statement Under Oath within 30 days of our request.
[[Image here]]
Furthermore, subject to ordinary standards of reasonableness and fairness, if a claimant does not cooperate with the policy EUO provisions, he or she is not entitled to PIP benefits. New Jersey Auto. Full Ins., Underwriting Assoc. v. Jallah, 256 N.J.Super. 134,141, 606 A.2d 839 (App.Div.1992). Additionally, the Jallah court noted that an insurer is entitled to an EUO, even if it previously terminated benefits and arbitration has been demanded, and without even showing fraud. Id. at 141, 606 A.2d 839.
[[Image here]]
One may not invoke the judicial process seeking affirmative relief and at the same time flout the duties imposed by that process to avoid development of proof having a bearing upon his or her right to such relief.
752 A.2d at 865-66. Here, prior to the assignment, St. Louis was the one entitled to make a claim or seek payment and, when he assigned his benefits to Appellants, entitlement to assert the claim or seek payment became solely Appellants’ right, and Appellants have no more right than St. Louis had to circumvent the EUO policy requirement.
Nevertheless, the majority holds that an EUO provision in an insurance policy is not enforceable against an assignee unless the assignee specifically agrees to comply with that condition precedent and to be bound by it. Otherwise, contends the majority, State Farm can only enforce that condition precedent against the insured. The majority also contends that the EUO provision in the instant insurance policy requires compliance by the insured as an “insured’s duty.” I disagree.
As to the assertion that an assignee must specifically agree to be bound by an EUO condition precedent, the majority contends that Appellants only took an assignment of the monies “that may be due and owing” and that Appellants did not undertake compliance with any conditions precedent contained in the policy to claim that money or seek payment of it. The assignment clearly provides that “[t]his is to act as an assignment of my rights and benefits to the extent of the Assignee’s services provided.” Those rights and benefits are contained in the insurance policy, and any money that may be due and owing derives from that policy. Indeed, the courts have clearly held that an action seeking payment of PIP benefits is an action for breach of contract governed by the terms and conditions of the insurance contract. See State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So.2d 1067, 1072 (Fla.2006) (“The purpose of a PIP suit is to recover damages for breach of an insurance contract.”). Simply because the medical provider rendered a service to the insured and took an assignment of the insured’s rights and benefits under the insured’s insurance policy does not deprive State Farm of the right and ability to contest the validity of those bills and refuse payment. See State Farm Mut. Auto. Ins. Co. v. Hyma Med. Ctr., Inc., 22 So.3d 699, 700 (Fla. 3d DCA 2009); United Auto. Ins. Co. v. Santa Fe Med. Ctr., 21 So.3d 60 (Fla. 3d DCA 2009) (“[T]he thirty-day period for the payment of PIP benefits contained in section 627.736(4)(b) only applies *341 to the payment of benefits that are reasonable, necessary, and related, and the insurer may contest the claim at any time....).” Moreover, the assignment certainly does not deprive State Farm of the right to investigate Appellants’ claim to determine if it is valid or deprive State Farm of the right to utilize the EUO provision that was inserted in the policy for that very purpose. There is nothing due and owing regarding a contested claim until it is determined that the claim is reasonable and the services provided were necessary and related to the accident, and there is nothing due and owing under the policy unless the EUO condition precedent in the policy has been complied with by “the person or organization making the claim or seeking payment.”
Before any assignee takes an assignment of contractual benefits, it is incumbent on that assignee to first learn the conditions contained in the contract of insurance that must be complied with in order receive those benefits and, if it does not, it acts at its own peril in blindly accepting the assignment. If Appellants were not diligent enough to discover the policy conditions from the insured before the assignment, State Farm certainly made Appellants aware of the EUO provisions in the notices it sent them in reply to their claim for payment.[4] The majority holding literally begs the question whether any assignee would agree to be bound by a condition precedent that may prevent recovery if not complied with when it is not required to do so. The practical effect of fite majority holding is that a valuable contract right and investigative tool State Farm has in its contract can be virtually eliminated at the whim of an assignee who may not be magnanimous enough to agree to be bound by a condition precedent to its recovery when it does not have to. This is simply wrong.
Moreover, a condition precedent is not the sort of contract condition to which an assignee must have specifically agreed in order for the courts to conclude that the assignee is bound thereby. In Shreve, for example, the assignee only took an assignment of the assignor’s interest in the purchase price due under a contract, yet the court specifically held that the assignee was required to show that “all conditions have been performed [under the contract] either by himself or the assignor.” Shreve, 421 So.2d at 724. In Eno, the assignee only took an assignment of the money due or to become due under a contract, and yet the Florida Supreme Court held that the assignee took the assignment subject to the same equities, conditions, and defenses as the assignor. Eno, 128 So. at 626. In neither case did the assignee accept an assignment of the entire contract nor specifically agree to be bound by the conditions of the contract nor defenses that may be asserted against the assignor.
This court’s decision in Dependable Insurance Co. v. Landers, 421 So.2d 175 (Fla. 5th DCA 1982), clearly demonstrates the type of duty or obligation that an assignee is not liable for when it accepts *342 an assignment of contract benefits unless the assignee specifically agrees to be bound by it. Landers involved an assignment of a retail installment contract. The assignor/bank repossessed the car without proper notice to the debtor and sold it prior to its assignment of the contract. A statute in effect provided that a debtor may recover damages against the secured party if the property is improperly repossessed without proper notice. The issue was whether the assignee was liable for the damages caused by the wrongful repossession by the assignor/bank prior to the assignment. This court held that the assignee did not expressly assume that liability when it took the assignment. In so holding, this court relied on the general rule that “unless the assignee assumes the assignor’s duties or liabilities, it is not liable to the debtor affirmatively, that is, beyond the point of defeating its claim. Failure to give notice in this case would be a ‘shield’ and not a ‘sword’ as regards [the assignee].” Id. at 179 (citations omitted). Here, there is no affirmative liability that Appellants were required to expressly assume through the assignment beyond the point of defeating the claim. But like the assignee in Landers, Appellants here are subject to the defenses that may be asserted by the other party to the contract to defeat the claim. Remarkably, the majority actually cites Landers as its authority for the proposition that an assignee must agree to be bound by contract conditions when Landers clearly demonstrates that a condition precedent, like an EUO, is not a contract condition to which an assignee must expressly agree to be bound by.
The other cases cited in the majority opinion do not stand for the proposition that the assignee of No-Fault benefits must specifically agree to be bound by conditions precedent in the policy. In De La Rosa v. Tropical Sandwiches, Inc., 298 So.2d 471 (Fla. 3d DCA 1974), cert. denied, 312 So.2d 760 (Fla.1975), there was no assignment of anything. That case involved a sale of stock and assets of a corporation. The initial sale of stock was secured by a promissory note executed by the buyer. The buyer subsequently sold the stock to another buyer, who assumed the obligation under the note. That buyer subsequently sold the stock to yet another buyer, who did not assume the obligations under the promissory note. The Third District Court simply held that the last buyer could not be held liable under the note because it did not assume the liability under the note. Not only did this case not involve an assignment of a policy and cause of action, but also the assumption of liability at issue in De La Rosa is far different from compliance with a condition precedent to suit.
The decision in Sans Souci v. Division of Florida Land Sales & Condominiums, 448 So.2d 1116 (Fla. 1st DCA 1984), also cited by Appellants, concerned the issue whether a novation — which requires the existence of a previously valid contract, the agreement of all the parties to a new contract, the extinguishment of the original contractual obligation, and a valid new contract — had occurred. Novation is not an issue in the instant case.
The majority contends that despite the assignment, only the insured is required to attend an EUO. The majority also contends that the insurance contract specifies that EUO compliance is the “insured’s dut[y].” I disagree. The plain language of the EUO provision states that “any person or organization making claim or seeking payment” may be required to attend the examination. “An assignment is a transfer of all the interests and rights to the thing assigned.” Lauren Kyle Holdings, Inc. v. Heath-Peterson Const. Corp., 864 So.2d 55, 58 (Fla. 5th DCA 2003); see also Price v. RLI Ins. Co., 914 So.2d 1010, *343 1013 (Fla. 5th DCA 2005); Rose v. Teitler, 736 So.2d 122, 122 (Fla. 4th DCA 1999) (“[I]t is well established that an ‘assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned.’ ” (quoting Family Bank of Hallandale, 667 So.2d at 259)). Once assigned, the assignor has no right to enforce the right or interest. Price, 914 So.2d at 1013-14; Lauren Kyle Holdings, 864 So.2d at 58. In Continental Casualty Co. v. Ryan Inc. Eastern, 974 So.2d 368 (Fla.2008), the court more fully explained these principles of assignment:
An assignment has been defined as “a transfer or setting over of property, or of some right or interest therein, from one person to another.” Black’s Law Dictionary 128 (8th ed. 2004) (quoting Alexander M. Burrill, A Treatise on the Law and Practice of Voluntary Assignments for the Benefit of Creditors § 1, at 1 (James Avery Webb ed., 6th ed. 1894)). Essentially, it is the “voluntary act of transferring an interest.” DeCespedes v. Prudence Mut. Cas. Co., 193 So.2d 224, 227 (Fla. 3d DCA 1966); accord Fla. Power & Light Co. v. Road Rock, Inc., 920 So.2d 201, 204 (Fla. 4th DCA 2006); 3A Fla. Jur.2d Assignments § 1 (2007); 6 Am.Jur.2d Assignments § 1 (2007). Importantly, once transferred, the assignor no longer has a right to enforce the interest because the assignee has obtained all “rights to the thing assigned.” Price v. RLI Ins. Co., 914 So.2d 1010, 1013-14 (Fla. 5th DCA 2005) (quoting Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp., 864 So.2d 55, 58 (Fla. 5th DCA 2003)).
Id. at 376. Hence, when the insured assigned to Appellants his rights to the No-Fault benefits and his cause of action to collect those benefits regarding the medical services Appellants rendered, the insured could no longer be “any person or organization making claim or seeking payment” because all of those rights were transferred to Appellants via the assignment. As the court explained in Allstate Insurance Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003), “In fact, where an insured does assign PIP benefits to the medical provider, it has been ruled an unqualified assignment which removes the insured’s standing to bring a direct action against the insurer, even though the insured remains liable for any medical bills not paid by the insurer.” Id. at 893 n. 3 (citing Oglesby v. State Farm Mut. Auto. Ins. Co., 781 So.2d 469 (Fla. 5th DCA 2001); Livingston v. State Farm Mut. Auto. Ins. Co., 774 So.2d 716, 717 (Fla. 2d DCA 2000) (“As a general rule, if an insured has assigned her right to receive personal injury protection (PIP) benefits to a health care provider, the insured may not file a lawsuit to collect the assigned benefits.”)); see also Schuster v. Blue Cross & Blue Shield of Fla., Inc., 843 So.2d 909, 911-12 (Fla. 4th DCA 2003) (“Under Florida law, an insured may assign his right to benefits under a contract of insurance. The effect of such an assignment is to place the insured’s cause of action for such benefits in the provider.”) (citations omitted). Once the assignment was made, State Farm could no longer require the insured to attend the EUO — it could only require Appellants, as assignees, to do so. But if, as Appellants contend, State Farm may not require the assignees to attend an EUO, State Farm loses the right it bargained for in the policy to require the person or organization making claim or seeking payment to attend the EUO through the mere expediency of an assignment. This is wrong.
As to the majority’s contention that the insurance contract classifies the EUO condition precedent as an “insured’s dut[y],” I note that is not an issue raised by any of *344 the parties to these proceedings.[5] Nevertheless, the pertinent policy provisions in the section of the policy relating to the EUO requirement belie that contention. The pertinent section in the policy provides:
Questioning Under Oath
Under:
a. Liability Coverage and Property Damage Liability Coverage, each insured;
b. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage any person or organization making claim or seeking payment; and
c. Physical Damage Coverages, you or the owner of a covered vehicle, or any other person or organization making claim or seeking payment;
must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require. Such person or organization must answer questions under oath, asked by anyone we name, and sign copies of the answers. We may require each person or organization answering questions under oath to answer the questions with only that person’s or organization’s legal representative, or representatives and no other person present.
(Emphasis in original). This part of the insurance policy clearly specifies in unambiguous terms that the particular coverage dictates who is required to attend an EUO. Claims made for No-Fault benefits under subsection b, which is the coverage involved in the instant case, allow State Farm the right to require any person or organization making a claim or seeking payment to attend the EUO, while claims made for liability and property damage liability under subsection a allow State Farm the right to require the insured to attend an EUO. Clearly, an assignee is any person or organization making a claim or seeking payment. Hence, according to the clear provisions of the insurance policy, the argument asserted in the majority opinion must necessarily fail when, as in the instant case, the coverage involved is No-Fault. Courts must apply the guiding principle adopted by the Florida courts that “insurance contracts are construed according to their plain meaning.” Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.2005).
The majority’s reliance on the decisions in Marlin Diagnostics v. State Farm Mutual Automobile Insurance Co., 897 So.2d 469, 469 (Fla. 3d DCA 2004), and Advanced Diagnostics Testing, Inc. v. State Farm Insurance Co., 11 Fla. L. Weekly Supp. C964, C965 (Fla. 11th Cir.Ct. Aug. 17, 2004), is misplaced. Those decisions are clearly distinguishable. The EUO clause in the instant case is much different from the EUO clauses at issue in Marlin, 897 So.2d at 469, which provided that “a person who suffers a bodily injury and makes a claim under the policy shall ‘... answer questions under oath and in *345 Advanced, 11 Fla. L. Weekly Supp. at C965, which provided that “[a]ny person who suffers a bodily injury ... must notify us of the claim in writing as soon as reasonably possible.... The person making claim also shall: ... be examined [and] ... answer questions....” The circuit court noted in Advanced that the policy specifically defined “person” as “a human being.” 11 Fla. L. Weekly Supp. at C965. Under these specific provisions, unlike the EUO provisions in the instant case, only the person (the human being) who suffered the bodily injury must attend the EUO and this is why the court in Advanced held that “it is clear under the terms of the insurance policy drafted by State Farm, that neither Advanced nor the treating physician was required to attend an EUO as a condition precedent to filing suit.” Id. Contrary to the assertion made by the majority, the specific policy provisions led the courts in Marlin and Advanced to hold that despite the assignment of policy benefits, the obligation to attend the EUO remained with the insured. In response to the holdings in Advanced and Marlin, State Farm amended its insurance policies to require that “any person or organization making claim or seeking payment” be examined. Therefore, unlike the assignees in Advanced and Marlin, the assignees in the instant case are clearly any person or organization that fall squarely within the meaning of the EUO clause provisions. I believe that had the courts in Marlin and Advanced reviewed the policy provision at issue in the instant case, a different decision would have been rendered.
Finally, I reject the assertion that section 627.736(6), Florida Statutes (2007), provides the exclusive means for a No-Fault insurer to obtain pre-suit discovery from a medical care provider who is the claimant. There is nothing in the provisions of section 627.736(6) that suggests insurers are prohibited from conducting an EUO of a medical care provider that is a claimant, and there is nothing in the statute that provides that the statute is the sole and exclusive means by which a No-Fault insurer may obtain the pre-suit information requested in an EUO. If that was the intent of the Legislature in enacting the statute, it certainly would have said so in clear and explicit terms, and it did not. The majority’s reliance on Marlin is once again misplaced. The court in Marlin, after holding that the particular provisions of the EUO clause at issue in that case only applied to the insured, simply recognized that the insurance company could acquire the requested information pursuant to section 627.736(6)(b). Marlin does not hold that the statute is the sole and exclusive means of obtaining medical information, and Marlin certainly does not hold that the statute is the exclusive means when an EUO clause, like the one in the instant case, does apply to medical provider/assignees. I do not think that the Legislature ever intended to require an insurer to expend the time and money to obtain what is in essence a bill of discovery to acquire medical information from the very medical provider/claimant seeking payment under an insurance policy that provides the insurer the right and ability to obtain the same information through an EUO.[6]
Indeed, the majority essentially concedes that the statute is not the exclusive method for insurers to obtain medical information from medical providers/assignees because the majority holds that a med *346 ical provider/assignee may be bound by an EUO clause if the assignment specifically requires it. Hence, the issue in this case is whether Appellants must comply with the EUO clause in the policy in order to make a claim or seek payment of PIP benefits under that policy without the necessity of specifically agreeing to be bound by that policy condition. Application of the statute is not determinative of this issue and is really a non-issue in this case.
I conclude that the policy clearly and unambiguously requires that any person or organization making claim or seeking payment for No-Fault benefits comply with the EUO provisions if requested by the insurer. Those provisions are a condition precedent to making claim or seeking payment. Appellants are persons or organizations making claim or seeking payment, and thus State Farm was within its rights under the policy to require Appellants to attend an EUO. Appellants, as assignees of the No-Fault benefits and cause of action under the policy, were not required to specifically assume this condition in order to be bound by it. Accordingly, the judgment rendered by the trial court should be affirmed.
State Farm has not only lost its contract right in the instant insurance policy, it has lost its right to enforce the EUO provision against assignees in all of the insurance policies it has issued that contain this EUO clause. But the loss is not restricted to State Farm; the majority holding applies to any insurance company that has issued a PIP policy with the same or similar EUO clause. The majority is correct that its opinion will have wide-ranging impact throughout the state and that this matter is one of great public importance. Therefore, I agree that the Florida Supreme Court should review this case as a matter of great public importance. The certified question should be:
WHETHER THE EUO PROVISION IN STATE FARM’S POLICIES IS A CONDITION PRECEDENT THAT MUST BE COMPLIED WITH WHEN A MEDICAL CARE PROVIDER TAKES AN ASSIGNMENT OF NO-FAULT BENEFITS AND CAUSE OF ACTION FROM THE INSURED WITHOUT SPECIFICALLY AGREEING TO BE BOUND BY THAT CONDITION.
PALMER, J., concurs.

. The record reveals that State Farm made repeated requests to Appellants to comply with the EUO requirement. In State Farm’s initial request, it quoted the EUO clause to Appellants and advised them that if they did not comply, payment would not be forthcoming. State Farm filed affirmative defenses in the declaratory relief action alleging that Appellants refused to comply with the EUO condition precedent and filed a counterclaim that included several counts alleging unlawful patient brokering, unnecessary diagnostic testing, deceptive and unfair trade practices, and unjust enrichment. An amended counterclaim was subsequently filed by State Farm adding other counts based on fraud and conspiracy to commit fraud.

. What the majority is referring to is a caption entitled, "Reporting Claims-Insured’s Duties.” After discussing the insured’s duties to report any claim in the first subsections of that part of the policy, the policy contains provisions regarding the EUO requirements in a subpart captioned, "Other Duties.” As I have discussed, the provisions regarding the EUO requirement are clear and unambiguous. Even if this were an issue that could be properly raised in the majority opinion, the courts have consistently held that a caption in an insurance policy may not be used to create an ambiguity in the policy provisions. Itnor Corp. v. Market Int’l Ins. Co., 981 So.2d 661 (Fla. 3d DCA 2008); Winter Garden Ornamental Nursery, Inc. v. Cappleman, 201 So.2d 479 (Fla. 4th DCA 1967).

. "[Florida Statute section] 627.736(6)(c) has long been construed to empower insurers, upon good cause shown, to petition a court for a bill of discovery permitting the insurer to conduct discovery concerning a person’s injuries, wages, medical treatment and costs of treatment.” 7 Fla. Prac., Motor Vehicle No-Fault Law (PIP) § 6:5 (2009-2010 ed.)