980 So.2d 1213 (2008)
UNITED AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Piedad BERMUDEZ, Appellee.
No. 3D07-2011.
District Court of Appeal of Florida, Third District.
April 30, 2008.
Rehearing Denied May 30, 2008.
*1214 Michael J. Neimand, Miami, for appellant.
Ginsberg & Schwartz and Arnold R. Ginsberg, Miami; Steven M. Singer, for appellee.
Before RAMIREZ, CORTIÑAS, and ROTHENBERG, JJ.
CORTIÑAS, J.
United Automobile Insurance Company ("United") appeals the trial court's order granting summary judgment in favor of the insured, Piedad Bermudez ("Bermudez"). The trial court certified the following question as one of great public importance:
IS AN INSURER REQUIRED BY SECTION 627.736(7)(a), FLORIDA STATUTES TO OBTAIN A MEDICAL REPORT BASED UPON A PHYSICAL EXAMINATION OF AN INSURED BEFORE IT MAY WITHDRAW PERSONAL INJURY PROTECTION BENEFITS?
We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(4)(A). We rephrase the certified question to read as follows:
WHETHER A MEDICAL REPORT ISSUED FOR THE WITHDRAWAL OF PERSONAL INJURY PROTECTION BENEFITS PURSUANT TO SECTION 627.736(7)(a), FLORIDA STATUTES MUST BE BASED UPON A PHYSICAL EXAMINATION OF THE INSURED THAT IS PERSONALLY CONDUCTED BY THE PHYSICIAN ISSUING THE REPORT.
We answer the rephrased question in the negative and we reverse the trial court's order granting summary judgment and remand for further proceedings.
Bermudez was involved in a car accident and sought medical treatment for her injuries. Bermudez demanded payment of the medical expenses by United, her insurance carrier. Subsequent to Bermudez's request for payment of medical expenses, United obtained a report from Dr. Peter Millheiser, M.D. stating that certain treatments received by Bermudez were not reasonable, related, or necessary. In preparing this report, Dr. Millheiser did not conduct a physical examination of Bermudez but did review her treatment records, including physical therapy visits, office visits, ultrasound testing, x-rays, an MRI, and the independent medical examination conducted at the request of United. Based upon Dr. Millheiser's report, United withdrew Bermudez's benefits pursuant to section 627.736(7)(a), Florida Statutes (2006), which provides, in pertinent part:
An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a valid report by a Florida physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that treatment was not reasonable, related, or necessary.
§ 627.736(7)(a), Fla. Stat. (2006).
The trial court granted Bermudez's motion for summary judgment on the basis that United did not satisfy the requirements for withdrawing benefits as set forth in section 627.736(7)(a). Specifically, the trial court found that Dr. Millheiser's report did not constitute a "valid report" under section 627.736(7)(a) because it was *1215 based solely on Dr. Millheiser's review of Bermudez's medical records and was not supported by his own physical examination. Section 627.736(7)(a) provides that a "valid report" is:
[P]repared and signed by the physician examining the injured person or reviewing the treatment records of the injured person and is factually supported by the examination and treatment records if reviewed and that has not been modified by anyone other than the physician. The physician preparing the report must be in active practice, unless the physician is physically disabled. Active practice means that during the 3 years immediately preceding the date of the physical examination or review of the treatment records the physician must have devoted professional time to the active clinical practice of evaluation, diagnosis, or treatment of medical conditions. . . .
Id. This language was inserted in the 2001 amended version of section 627.736(7)(a) in an effort to clarify the requirements of physician reports created for the purpose of withdrawing PIP benefits.
The trial court found that the legislature intended to require a physical examination by the physician issuing the report before the withdrawal of benefits. In support of this, the trial court looked to a portion of the Senate Staff Analysis which states:
The effect of this provision is to help remedy the current practice of PIP insurers utilizing what are termed "paper IME's" in which the insurer's physician merely reviews the medical treatment documents of the injured person and writes a report stating that such treatment was not reasonable, related or necessary.
Senate Staff Analysis and Economic Impact Statement, Senate Bill 1092, at 12 (Fla.2001). We disagree with the trial court's interpretation of the Senate Staff Analysis and find that a "valid report" for the withdrawal of PIP benefits does not have to be based upon a physical examination conducted by the actual physician preparing the report. Instead, we hold that under section 627.736(7)(a) a medical report issued for the withdrawal of PIP benefits may be based on a physical examination of the insured that is conducted by either the physician preparing the report or another physician's examination.[1]
The parties have also alerted us to a recent case from the Second District Court of Appeal, which held that when an insurer seeks to deny a payment for treatment on the basis that the tests were unreasonable and medically unnecessary, section 627.736(7)(a) does not apply and, therefore, a valid report by a reviewing physician is not required. State Farm Mut. Auto. Ins. Co. v. Rhodes & Anderson, D.C., P.A., ___ So.2d ___, ___, 2008 WL 786856 *1 (Fla. 2d DCA Mar. 26, 2008). State Farm held that section 627.736(7)(a) is applicable only in "circumstances involving the complete termination of payments to a physician" rather than the denial of a single claim as was presented in State Farm. Id. at *3, at ___. Instead, according to State Farm, section 627.736(4) is the applicable statute for situations involving a challenge to a claim on the basis that it is unreasonable, unnecessary, or unrelated. Id. at *5, at ___.
Both parties believe State Farm's holding is incorrect. We agree. In United Automobile Insurance Co. v. Viles, 726 So.2d 320 (Fla. 3d DCA 1998), a case decided *1216 prior to the 2001 amendment of section 627.736(7)(a), we considered the following certified question as being one of great public importance:
In any claim for personal injury protection benefits in which the insurance carrier has withdrawn, reduced benefits[,] or denied further benefits, is it a condition precedent pursuant to Section 627.736(7)(a), Florida Statutes, that an insurer obtain a report by a physician licensed under the same chapter as the treating physician stating that the treatment was not reasonable, related or necessary in order for the insurance carrier to defend a suit for reduction, withdrawal or denial of further payments on the grounds of reasonableness, necessity or relationship?
Viles, 726 So.2d at 321. We answered the question in the affirmative. Id. Importantly, as clearly stated in the certified question, the holding in Viles applied to "reduction, withdrawal or denial . . . on the grounds of reasonableness, necessity or relationship[.]" Id. Nevertheless, State Farm limited the holding in Viles to cases where an insurer only withdraws payments or treatment authorization as opposed to an insurer's reduction or denial of a claim. State Farm, 2008 WL 786856, at *3, ___. So.2d at ___. Viles asserted no such limitation. Thus, we reaffirm our holding in Viles that a valid report[2] is required where an insurer attempts to reduce, withdraw, or deny PIP benefits on grounds of reasonableness, necessity, or relationship. Viles, 726 So.2d at 321.
Section 627.736(4), which State Farm relied on, entitled "BENEFITS; WHEN DUE," deals with timing as to when PIP benefits that are properly due must be paid by an insurer before they are considered overdue.[3] Contrary to the holding in *1217 State Farm, section 627.736(4) does not deal with challenges to medical treatment on the basis that the treatment is unrelated, unnecessary or unreasonable.[4] Indeed, section 627.736(4) expressly provides that "[t]his paragraph does not preclude or limit the ability of the insurer to assert that the claim was unrelated, was not medically necessary, or was unreasonable. . . ." § 627.736(4), Fla. Stat. (2006). Instead, we find that a withdrawal of PIP benefits on the basis that the medical treatment received was unrelated, unnecessary, or unreasonable is properly dealt with in accordance with section 627.736(7)(a).
Accordingly, we answer the certified question in the negative, certify direct conflict with the Second District's opinion in State Farm, and reverse and remand for further proceedings.
NOTES
[1] The parties agree and we concur that this case involves the withdrawal of PIP benefits and not denial of PIP coverage.
[2] Prior to the 2001 amendment, section 627.736(7)(a) did not include any reference to a "valid report" and only required that prior to an insurer "withdraw[ing] payment of a treating physician without the consent of the injured person," the insurer obtain "a report by a physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that treatment was not reasonable, related, or necessary." § 627.736(7)(a), Fla. Stat. (2000). There was no provision stating that the report must rely upon a physical examination of the insured. Id. The 2001 amendment required that an insurer's withdrawal of payment be preceded by the procurement of a "valid report." § 627.736(7)(a), Fla. Stat. (2001). As clearly set forth in the amendment, a "valid report" must be "factually supported by the examination and treatment records if reviewed." Id. As such, a "valid report" requires reliance on a physical examination of the insured prior to an insurer's withdrawal of payment.
[3] Section 627.736(4)(b) states, in pertinent part:

Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same. . . . When an insurer pays only a portion of a claim or rejects a claim, the insurer shall provide at the time of the partial payment or rejection an itemized specification of each item that the insurer had reduced, omitted, or declined to pay and any information that the insurer desires the claimant to consider related to the medical necessity of the denied treatment or to explain the reasonableness of the reduced charge, provided that this shall not limit the introduction of evidence at trial. . . . However, notwithstanding the fact that written notice has been furnished to the insurer, any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment. . . . This paragraph does not preclude or limit the ability of the insurer to assert that the claim was unrelated, was not medically necessary, or was unreasonable or that the amount of the charge was in excess of that permitted under, or in violation of, subsection (5). Such assertion by the insurer may be made at any time, including after payment of the claim or after the 30-day time period for payment set forth in this paragraph.
§ 627.736(4)(b), Fla. Stat. (2006).
[4] In AIU Insurance Co. v. Daidone, 760 So.2d 1110 (Fla. 4th DCA 2000), the court found "that the thirty-day period in section 627.736(4) applies only to benefits which are reasonable and necessary as a result of the accident." AIU, 760 So.2d at 1112. Therefore, section 627.736(4) is not applicable if the medical treatment is not reasonable and necessary as a result of the accident and, as such, a claim for unrelated, unreasonable, or unnecessary treatment may be challenged subsequent to the thirty-day time period set forth in section 627.736(4). Id.